2007 ND 139

**Heather A. GRANER, Plaintiff and Appellant,**

v.

**Jeffrey R. GRANER, Defendant and Appellee.**

**No. 20060359.**

Supreme Court of North Dakota.

Aug. 22, 2007.

TaLisa Ann Nemec, Nemec Law Office, Steele, N.D., for plaintiff and appellant.

Todd D. Kranda, Kelsch, Kelsch, Ruff & Kranda, Mandan, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Heather Graner appeals from a third amendment to judgment granting Jeffrey Graner's motion to modify custody of two of the parties' minor children, denying her motion to change the children's residence to Arizona, and finding her in contempt. We affirm those parts of the third amendment to judgment denying Heather Graner's motion to relocate and finding her in contempt, and we reverse that part of the third amendment to judgment modifying custody of the two youngest minor children and remand for further proceedings.

I

[¶ 2] Heather and Jeffrey Graner have three children together. In 2002, Heather and Jeffrey Graner divorced. The parties entered into a stipulation, which was incorporated into the divorce judgment. The stipulation provided Heather Graner would receive physical custody of all three children, and Jeffrey Graner would have weekend and Wednesday night visitation every other week. They also agreed to an alternating holiday visitation schedule.

[¶ 3] In August 2004, Heather Graner moved for permission to relocate with the parties' three children from Bismarck to Maryland to pursue business opportunities. Jeffrey Graner opposed the motion and moved to modify physical custody of all three children to him. He argued the oldest child had been living with him since November 2003. He claimed Heather Graner had willfully denied his visitation with the two youngest children, and that she was not able to provide a stable home environment, had many boyfriends, often left the children with strangers, had trouble providing for the children's basic needs, abused drugs, and suffers from bipolar disorder. Heather Graner denied all of Jeffrey Graner's allegations, and claimed he was attempting to alienate the children from her. An evidentiary hearing on the motions was set for November 8, 2004, but on November 5, 2004, the parties entered into a stipulation resolving the dispute and agreed to modify custody placing physical custody of the parties' oldest child with Jeffrey Graner. The parties agreed Heather Graner would retain physical custody of the two youngest children. An amended judgment, consistent with the parties' stipulation, was entered on November 10, 2004.

[¶ 4] On January 19, 2006, Heather Graner moved for permission to relocate to Arizona with the parties' two youngest children. She wanted to relocate to live with her fiancé and his extended family and to rebuild her business designing and selling plush novelty toys, which failed in October 2004. Jeffrey Graner again opposed the motion and moved to modify physical custody of the two youngest children. He argued the relocation would not be in the children's best interests. He again argued he should have custody because the children's living environment is unstable and Heather Graner is attempting to alienate the children from him.

[¶ 5] Before a hearing on the motions was held, Heather Graner's engagement to her fiancé ended, but she decided to continue pursuing her motion to relocate. An evidentiary hearing on the motions was scheduled for March 15, 2006, but the district court granted a continuance at Heather Graner's request. The court appointed a custody investigator to assist the court in reaching a decision on the custody modification and relocation issues after considering the tumultuous history between the parties.

[¶ 6] On June 30, 2006, Jeffrey Graner moved for a contempt determination against Heather Graner for failure to comply with the visitation schedule and failure to pay his costs for subpoenaing witnesses as ordered by the district court. He claimed Heather Graner denied his June 23–26, 2006, weekend visitation, and he requested the court award him attorney's fees and costs for the contempt motion.

[¶ 7] An evidentiary hearing on all motions was held on August 31, 2006. Both parties testified at the hearing and presented other witnesses. Heather Graner testified the move to Arizona would be in the children's best interests because she lacks family support in North Dakota since she has been estranged from her biological family for the last five years, and she has developed a family relationship and receives support from her ex-fiancé's family in Arizona. She testified they would live with her ex-fiancé's sister in a new home, located close to a good school, and the children would benefit from the improved living conditions. Heather Graner testified she is unemployed and receives public assistance, but she would be able to take advantage of the enhanced economic opportunities available in Arizona. She testified her ex-fiancé's family has invested in and plans to help her rebuild her failed business. She anticipates the business will be more successful in Arizona because it will be closer to a seaport, which will save on the cost of importing the products from China, but she was reluctant to testify about specific plans for the business. She accused Jeffrey Graner of trying to alienate the children from her, and argued the relocation would benefit the children because the distance and visitation schedule would help stop the alienation, and the children would have access to a counselor specializing in parental alienation.

[¶ 8] Jeffrey Graner testified about his relationship with the children and why he is seeking custody of the two youngest children. He testified Heather Graner has often expressed a desire to move out of state to marry different men she has met on the Internet, and he compared her current relocation request to the prior motion to relocate to Maryland. He also again claimed Heather Graner has been physically abusive in the past, has had substance abuse problems, and suffers from bipolar disorder.

[¶ 9] Heather Graner's biological sister testified about Heather Graner's relationship with her biological family, and her past substance abuse and anger issues. The custody investigator testified about her investigation and recommended that Jeffrey Graner have custody of the parties' three children and that the court deny Heather Graner's motion to relocate with the two youngest children.

[¶ 10] On September 27, 2006, the district court issued a memorandum opinion and order denying Heather Graner's motion to relocate and granting Jeffrey Graner's motion to modify custody. The district court also found Heather Graner was in contempt because she denied visitation on June 23–26, 2006, and had not paid Jeffrey Graner's costs for subpoenaing witnesses as ordered. The court ordered Heather Graner to pay the subpoena costs

and awarded Jeffrey Graner $250 in attorney's fees for bringing the motion for contempt. A third amendment to judgment was subsequently entered.

## II

[¶ 11] Heather Graner argues the district court erred in denying her motion to relocate with the parties' two youngest children to Arizona. She claims the relocation is in the children's best interests because they would have the support of her ex-fiancé's family and she would be able to rebuild her failed business.

[¶ 12] A district court's decision on relocation is a finding of fact, which will only be reversed on appeal if it is clearly erroneous. *Dvorak v. Dvorak*, 2006 ND 171, ¶ 11, 719 N.W.2d 362. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, there is no evidence to support it, or, if there is some evidence to support the finding, on the entire record we are left with a definite and firm conviction a mistake has been made. *Id.*

[¶ 13] Under N.D.C.C. § 14–09–07, a custodial parent generally may "not change the residence of the child to another state except upon order of the court or with the consent of the noncustodial parent, if the noncustodial parent has been given visitation rights by the decree." The burden is on the custodial parent to prove, by a preponderance of the evidence, that the move is in the child's best interests. *Porter v. Porter*, 2006 ND 123, ¶ 4, 714 N.W.2d 865. In deciding whether a custodial parent should be allowed to relocate with a minor child to another state, the court must apply the four factors we outlined in *Stout v. Stout*, 1997 ND 61, ¶ 33, 560 N.W.2d 903, and modified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move, and

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

No single factor is dominant, and what may be a minor factor in one case may have a greater impact in another. *Dvorak*, 2006 ND 171, ¶ 14, 719 N.W.2d 362.

[¶ 14] The district court applied the four *Stout–Hawkinson* factors and found the move to Arizona was not in the children's best interests. Heather Graner argues the court's findings on the first and fourth factors are clearly erroneous and the evidence favors a finding that the move is in the children's best interests.

[¶ 15] The first *Stout–Hawkinson* factor requires the court to consider the prospective advantages of the move, including enhanced economic opportunities and other less tangible non-economic benefits. *Porter*, 2006 ND 123, ¶ 8, 714 N.W.2d 865. "Essential to the analysis is the 'importance of maintaining continuity and stability in the custodial family.'" *Id.* (quoting *Goff v. Goff*, 1999 ND 95, ¶ 14, 593 N.W.2d 768). We recognize that an improvement in the custodial parent's quality of life will indirectly benefit the child.

*Goff*, at ¶ 13. Some of the factors the district court should consider include the custodial parent's proposed employment at the relocation site, whether the custodial parent's and child's health and well-being are benefited, whether the custodial parent has remarried and requests to move to live with the new spouse, whether the custodial parent will have more time to spend with the child, whether there are family members who will provide a support network, the child's reasonable preference, and educational opportunities. *Gilbert v. Gilbert*, 2007 ND 66, ¶ 14, 730 N.W.2d 833 (new spouse); *Oppegard–Gessler v. Gessler*, 2004 ND 141, ¶ 10, 681 N.W.2d 762 (other benefits); *Dickson v. Dickson*, 2001 ND 157, ¶ 12, 634 N.W.2d 76 (employment).

[¶ 16] The district court found the first factor did not favor relocation because the move would not improve the custodial family's quality of life. The court found Heather Graner was no longer engaged, and despite her claims of moving to be with her family, she does not have any relatives in Arizona. The court found Heather Graner failed to prove any economic advantages of the move. Heather Graner is unemployed, but she planned to re-establish a failed plush toy business she ran in North Dakota. She testified her ex-fiancé's parents had invested in her business and were planning to help her run the business. Heather Graner testified the business would benefit from Arizona's geographic location because it is near a seaport, which would lower the costs of importing the product from China, and most of her business is conducted over the Internet. She testified that she expected to start earning an income from the business some time in late 2006. The court found Heather Graner failed to prove the economic advantages of the move because her business had already failed once, she was not earning any income from the business, and she did not present a business plan or other evidence to establish the viability of the business in Arizona. The court found that although Heather Graner testified the children would attend school close to her Arizona residence, she provided no other information about the school or facts that would improve the quality of life for the children.

[¶ 17] It is evident from the district court's decision that the first *Stout–Hawkinson* factor was the court's primary reason for denying the motion to relocate. The court found Heather Graner failed to prove by a preponderance of the evidence that the move would enhance either the economic or non-economic aspects of the custodial family's life, and we conclude the evidence supports the court's finding.

[¶ 18] The parties are not challenging the court's findings on the second and third factors. The court found Heather Graner's motive for relocating was proper and Jeffrey Graner's opposition to the move was not suspect.

[¶ 19] The fourth factor requires the court to consider "the negative impact of the move on the noncustodial parent's relationship with the children and the ability to restructure visitation to foster and preserve the relationship." *Oppegard–Gessler*, 2004 ND 141, ¶ 15, 681 N.W.2d 762. Under the fourth factor, "the [district] court must determine whether a visitation schedule can be devised, which can reasonably provide the foundation for maintaining and developing a parent-child relationship between the child and the noncustodial parent." *Stout*, 1997 ND 61, ¶ 37, 560 N.W.2d 903. Distance alone is not a sufficient basis to deny relocation. *Porter*, 2006 ND 123, ¶ 17, 714 N.W.2d 865. " '[A] move sought in good faith and to gain legitimate advantages for the custodial parent and the child must not be denied simply because visitation cannot

continue in the existing pattern.'" *Oppe-gard–Gessler*, at ¶ 15 (quoting *Stout*, 1997 ND 61, ¶ 36, 560 N.W.2d 903). Only in exceptional circumstances will a relocation be denied based on the fourth factor, including when the court finds the custodial parent would not comply with any visitation schedule it could order and the custodial parent would not foster the noncustodial parent's relationship with the child. *Negaard v. Negaard*, 2002 ND 70, ¶¶ 15–17, 642 N.W.2d 916.

[¶ 20] In this case, the district court found the distance and cost of travel would make regular and meaningful visitation extremely difficult, and therefore the move would negatively impact the children's relationship with their father, older sibling, and other extended family members. But distance alone is not sufficient to deny relocation and there is no evidence to support that travel expense was a factor in this case; rather, the court must consider whether a visitation schedule can be refashioned to preserve the parent-child relationship. *See Gilbert*, 2007 ND 66, ¶ 17, 730 N.W.2d 833. Furthermore, visitation travel expenses can be the basis for a downward deviation from the presumptive child support and extended visitation can also result in adjustments· to child support. N.D. Admin. Code §§ 75–02–04.1–09(2)(i) and 75–02–04.1–08.1. Heather Graner proposed extended summer and holiday visitation, and we have said similar visitation schedules generally are sufficient to foster a relationship between the child and noncustodial parent. *See id.* at ¶ 21. The district court did not find the visitation was not likely to occur because Heather Graner would not comply with a re-structured visitation schedule; rather, the court's basis for finding the fourth factor did not favor relocation was the distance and cost. We conclude the district court misapplied the fourth factor.

[¶ 21] Although the court misapplied the fourth factor, the court's findings on factor one, specifically the lack of advantages and benefits to the move, support the court's decision to deny relocation. We affirm the district court's decision to deny Heather Graner's motion to relocate to Arizona.

### III

[¶ 22] Heather Graner claims the district court's decision to modify custody is clearly erroneous because the court's findings were induced by an erroneous view of the law. She argues the court applied the wrong standard in deciding whether to modify custody and should have applied the stricter modification standard of N.D.C.C. § 14–09–06.6(5), because Jeffrey Graner's motion to modify custody was brought within two years of the amended judgment.

[¶ 23] A district court's decision to modify custody is a finding of fact, which will not be overturned on appeal unless it is clearly erroneous. *Seibel v. Seibel*, 2004 ND 41, ¶ 5, 675 N.W.2d 182.

[¶ 24] A court may not modify a prior custody order within two years of the entry of an order establishing custody unless the court finds the modification is necessary to serve the best interests of the child and:

a. The persistent and willful denial or interference with visitation;

b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or

c. The primary physical care of the child has changed to the other parent for longer than six months.

N.D.C.C. § 14–09–06.6(5). If a party moves to modify custody more than two years after the entry of an order establish-

ing custody, the court may modify custody if it finds:

   a. On the basis of facts that have arisen since the prior order or which were unknown to the court at the time of the prior order, a material change has occurred in the circumstances of the child or the parties; and

   b. The modification is necessary to serve the best interest of the child.

N.D.C.C. § 14–09–06.6(6). An amended judgment making only minor adjustments to peripheral issues, such as minor visitation changes, without involving any issue of or a change in designation of the custodial parent is not an order establishing custody and does not restart the two-year period limiting application of the less demanding modification standard under N.D.C.C. § 14–09–06.6(6). *Quarne v. Quarne*, 1999 ND 188, ¶ 10, 601 N.W.2d 256.

[¶ 25] Heather Graner argues the district court should have applied N.D.C.C. § 14–09–06.6(5) because Jeffrey Graner's January 2006 motion to modify custody was filed within two years of the November 10, 2004, amended judgment. She claims the amended judgment made major adjustments to all three children's familial environment since custody of the oldest child was modified, unlike the minor visitation changes in *Quarne*, and therefore the amended judgment was an order establishing custody of all three children.

[¶ 26] The district court found the custody of the two youngest children had not been modified since the divorce judgment was entered in October 2002, and the 2004 amended judgment was not an order establishing custody of the two youngest children because it only modified custody of the oldest child. The court concluded the stricter modification standard of N.D.C.C. § 14–09–06.6(5) did not apply.

[¶ 27] The purpose of the two-year period limiting modification is to provide a moratorium and spare children the painful, disruptive, and destabilizing effects of repeat custody litigation. *Molitor v. Molitor*, 2006 ND 163, ¶ 13, 718 N.W.2d 13. The legislation, which created N.D.C.C. § 14–09–06.6, was the result of the 1995 Joint Family Law Task Force formed by order of this Court and at the request of the State Bar Association. *Quarne*, 1999 ND 188, ¶ 9, 601 N.W.2d 256. Chair of the Family Law Task Force, Sherry Mills Moore, testified about the purpose of the legislation before the Senate Judiciary Committee:

> With SB 2167 we are trying to put more stability in the lives of children who are the object of a custody dispute by slowing the revolving door to the courthouse. Stated from a more child-friendly perspective-SB 2167 would let children of warring parents live their childhood somewhere other than the courthouse, to have decisions made in their lives that are not influenced by the specter of a pending hearing, and allow family activities free of evidence gathering.
>
> .... The decision about custody, and the process attendant to making that decision are of their very nature painful, disruptive, and destabilizing....
>
> This bill would establish what is, in essence, a cooling-off period following a custody decision. Presently, a court can decide custody one day and on the very next, the unsuccessful party can file a motion seeking to change that custody and start things all over again. While this new motion is pending and the non-custodial parent gets another run at the court, the children are right back in litigation soup.
>
> Under SB 2167, for a period of two years following a custody determination there is something of a moratorium for

the family. The custody-changing process cannot be initiated except in some specific and necessary situations....

*Hearing on S.B. 2167 Before the Senate Judiciary Committee*, 55th N.D. Leg. Sess. (Jan. 21, 1997).

[¶ 28] When Heather Graner moved to relocate to Maryland with the parties' three children in August 2004, Jeffrey Graner resisted and moved to modify custody of all three children, but three days before the evidentiary hearing the parties reached an agreement on the custody of all three children. The two youngest children were subjects of the 2004 custody proceeding, and at that time Jeffrey Graner made arguments similar to those he is making now. He claimed Heather Graner was unable to provide a stable home environment, she abused drugs and had mental health problems, she was unable to provide for the children's basic needs, and she was attempting to alienate the children from him and interfere with his visitation. By the time Heather and Jeffrey Graner had reached an agreement about the custody of the three children in 2004, "the specter of a pending hearing" had taken its toll. The evidentiary hearing was three days away, depositions had been completed, and affidavits were filed. On the facts of this case, the amended judgment was like an order denying a custody modification of the two youngest children, and we conclude the amended judgment resulting from the 2004 motion to modify custody was "an order establishing custody" of all three children within the meaning of the statute. N.D.C.C. § 14–09–06.6(5).

[¶ 29] We are not deciding whether a motion to modify custody of only some of the minor children and not others, resulting in a modification of custody, falls within the meaning of the statute. Our decision is based on the facts of this case, and

in August 2004 Jeffrey Graner moved to modify custody of all three children. This was a proceeding in which the custody of the two youngest children was at issue. The parties agreed to modify custody of the oldest child only after completing discovery and coming within three days of the hearing on the motion. If the 2004 amended judgment is not considered "an order establishing custody," a noncustodial parent could thwart the legislative intent by bringing another motion to modify custody under N.D.C.C. § 14–09–06.6(6) immediately upon a denial of a prior motion to amend custody, and that result was not intended. We conclude the November 2004 amended judgment was "an order establishing custody" of the parties' three children, and therefore the district court misapplied the law when it applied N.D.C.C. § 14–09–06.6(6) in deciding whether to modify custody of the two youngest children.

[¶ 30] We reverse and remand the custody determination to the district court to apply the stricter modification standard of N.D.C.C. § 14–09–06.6(5) on the evidence in the record. On remand, the court may only modify custody of the parties' two youngest children if the court finds the modification is necessary to serve the children's best interests and there has been a persistent and willful denial or interference with visitation, the children's environment endangered their physical or emotional health or impaired their emotional development, or the children had been in Jeffrey Graner's care for more than six months at the time of the motion to modify custody. N.D.C.C. § 14–09–06.6(5).

IV

[¶ 31] Heather Graner argues the district court abused its discretion in finding her in contempt because the evidence does not support a finding that she

intentionally denied Jeffrey Graner's visitation.

[¶ 32] A district court has broad discretion in deciding whether to hold a person in contempt, and a court's finding of contempt will not be reversed on appeal unless there is a clear abuse of discretion. *Montgomery v. Montgomery*, 2003 ND 135, ¶ 18, 667 N.W.2d 611. A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law. *Id.*

[¶ 33] Jeffrey Graner claimed Heather Graner denied his visitation with the two youngest children on June 23–25, 2006. Heather Graner testified there was a misunderstanding about the visitation and she believed they had agreed Jeffrey Graner would give up two weekend visitations so she could take the children to Arizona for a few weeks and in exchange he would have a week-long visitation which would allow the children to attend a camp to which he planned to send them. Jeffrey Graner testified that he did not agree to this arrangement, and he believed he was only giving up one weekend visitation in exchange for a week-long visitation to allow the children to attend camp.

[¶ 34] The court found Heather Graner removed the children from North Dakota without an agreement to do so and therefore denied Jeffrey Graner his scheduled visitation. The court found Heather Graner was in contempt and awarded Jeffrey Graner attorney's fees for bringing the motion for contempt. The court did not act in an arbitrary, unreasonable, or unconscionable manner, and therefore we conclude the court did not abuse its discretion.

V

[¶ 35] We affirm those parts of the third amendment to judgment denying Heather Graner's motion to relocate and finding her in contempt, and we reverse that part modifying custody of the parties' two youngest minor children and remand for further proceedings consistent with this opinion.

[¶ 36] GERALD W. VANDE WALLE, C.J., and CAROL RONNING KAPSNER, JJ., concur.

DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur in the result.